IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERESA JONES                                                                                          PLAINTIFF

V.                                          CASE NO. 12-CV-4101

TRUMAN ARNOLD COMPANIES                                                         DEFENDANT

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment (ECF No. 34) filed by Defendant Truman Arnold Companies. Plaintiff Teresa Jones has filed a response. ECF No. 39. Defendant has filed a reply. ECF No. 40. The matter is ripe for the Court's consideration.

**I. BACKGROUND**

The Court states the facts in the light most favorable to Plaintiff Teresa Jones. Jones was employed by Truman Arnold Company ("TAC") at its Road Runner convenience store "No. 2" in Texarkana, Arkansas, from February 2011 until the end of January 2012. Jones alleges that her store manager, John Kelly, sexually assaulted her on or about May 24, 2011, in the car wash of the Road Runner. Prior to that time, Jones alleges that Kelly harassed her through a pattern of uninvited and unwelcome sexual propositions, lewd text messages, and unwanted touching. Jones also alleges that Kelly threatened to fire her if she told anyone of his behavior.

On July 23, 2011, Jones claims that she suffered an epileptic seizure at work and blacked out. Later that day, TAC personnel determined that Jones's cash register was short $715.82. Jones asserts that she found $300 of the missing money on July 26, 2011. On that same day, Jones met with Kelly and a female supervisor, Elsie Washington. At the meeting, Jones provided a doctor's note stating

that she had a seizure on July 23, 2011. Plaintiff states that she does not recall the events that happened on the day of the seizure, but she does not dispute that her cash register was short. Kelly and Washington told Jones that she could not return to work for a period of two weeks because of the seizure, the black out, and the loss of the money. They further told her that she could no longer handle cash or work at a register, and Jones agreed to being taken off cash register duties. Jones was informed that, before she could return to work, she must obtain a doctor's note stating that she "could work the hours or [she] would not have [any] more blackouts at the store." ECF No. 39-2, p. 14.

According to Jones, a few days prior to the July 23, 2011 cash register incident, she had contacted the TAC human resources representative, Denny Peterson, to complain of the alleged sexual harassment by Kelly. Jones met with Peterson on July 26, 2011, after her meeting with Kelly and Ms. Washington. During the meeting with Peterson, Jones provided a written statement to Peterson about the alleged assault in the car wash that occurred in May 2011, and Jones showed Peterson saved text messages on her cell phone that were purportedly from Kelly. Peterson consulted with Kelly's supervisor and TAC's general counsel, and Kelly's employment was terminated on July 27, 2011. Jones, however, remained employed with TAC until TAC sold its convenient stores at the end of January 2012.

TAC maintained a written sexual harassment policy that all employees were provided upon employment. The TAC anti-harassment policy states, in the section entitled "Employee Responsibility," that an employee who believes that they have been subjected to harassment of any type is to report the incident "immediately to your direct supervisor or to the human resources representative at 903-794-3835." ECF No. 35-1, p. 7. The policy also identifies two other persons

(the company president and a company vice-president) who could be contacted for the reporting of harassment. ECF No. 35-1, p. 7. The policy declares that each allegation will be investigated. ECF No. 35-1, p. 8. The policy further expresses that, under no circumstances, will any employee who reports an alleged incident of harassment be subjected to reprisal or retaliation of any kind. ECF No. 35-1, p. 8.

At the beginning of her employment with TAC in February of 2011, Jones received a copy of the policy, acknowledged receipt of the policy, and admitted that she understood what constituted sexual harassment and that any incident of sexual harassment was to be immediately reported. Jones also acknowledged the posting of the policy at the store in which she worked. In fact, Jones used the posted information within her store to make her initial phone call reporting the alleged harassment by Kelly.

After receiving a right to sue letter, Jones filed the present suit on August 29, 2012. In her First Amended Complaint (ECF No. 23), Jones makes the following claims against TAC: sexual harassment and retaliation; outrage; battery; defamation; and negligent hiring, supervision, and retention.[1] TAC asserts that it is entitled to summary judgment on all of these claims.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but

---

[1] Jones has abandoned her claims for outrage, battery, and defamation. ECF No. 39-1, p. 2. Thus, TAC is entitled to summary judgment on these claims.

"whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)). To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (8th Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

### III. DISCUSSION

Jones makes two federal claims against TAC: a Title VII hostile work environment claim and a Title VII retaliation claim. Jones also makes corresponding state law claims pursuant to the Arkansas Civil Rights Act.[2]

---

[2] The Arkansas Civil Rights Act "expressly instructs [courts] to look to federal civil-rights law when interpreting the Act." *Island v. Buena Vista Resort*, 103 S.W.3d 671, 675 (Ark. 2003); Ark. Code Ann. § 16-123-105. Accordingly, while TAC moved for summary judgment as to Plaintiff's claims pursuant to both Title VII and the Arkansas Civil Right Act, the Court's analysis for both will be conducted using the federal standards as encouraged by Ark. Code Ann. § 16-123-105.

### A. Hostile Work Environment Claim

Jones alleges that TAC subjected her to sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act. TAC, however, maintains that summary judgment should be granted in its favor because it is entitled to its *Ellerth-Faragher* affirmative defense for supervisor harassment. Plaintiff argues that TAC is not entitled to this affirmative defense and that material fact questions preclude summary judgment.

Title VII prohibits employers from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). "Sexual harassment may violate Title VII where it is sufficiently 'severe or pervasive' so as to create an 'objectively hostile or abusive work environment.'" *Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). An employer is vicariously liable for a supervisor's actionable sexual harassment of employees unless the employer can establish that it is entitled to the *Ellerth-Faragher* affirmative defense. *Id.* (citing *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1195 (8th Cir. 2006)). "An employer may only assert the affirmative defense when it has taken no tangible employment action against the allegedly harassed employee." *Id.*

To establish the *Ellerth-Faragher* affirmative defense, an employer must show the following: (a) that it exercised "reasonable care to prevent and correct promptly any sexually harassing behavior"; and (b) that the employee "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

Jones does not specifically argue that she suffered a tangible employment action as it relates to TAC's *Ellerth-Faragher* affirmative defense. However, in other sections of her brief, Jones refers to her time off following her seizure as a "suspension." ECF No. 39, p. 13. "A tangible employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"*Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (citing *Ellerth*, 524 U.S. at 761, 118 S. Ct. 2257). Even if a suspension did occur that put her employment at a material disadvantage, Jones cannot prove a causal connection between her sexual harassment claims and her suspension. *See Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 355-56 (4th Cir. 2013) (A female employee who was allegedly sexually harassed by her supervisor did not experience a tangible employment action imputable to her employer where she had not yet reported the harassment at the time she was suspended for actions unrelated to the harassment, her supervisor did not make the decision to suspend her, and she did not demonstrate an actual pecuniary loss due to the suspension).

Throughout her Statement of Genuine Issues of Material Facts and her deposition testimony, Plaintiff consistently attributes her "suspension" of July 26, 2011, to her epileptic seizure, her black-out, and the resulting cash shortage and not to her claims of sexual harassment.[3] ECF Nos. 35-2, p. 35; 39, p. 6; 39-1, p. 3. Thus, Jones cannot show that her purported suspension on July 26, 2011, is connected to her harassment claim. Moreover, Jones has presented no evidence to suggest that

---

[3] In her Statement of Genuine Issues of Material Facts, Jones states that "she was suspended from work for an alleged cash shortage and told she could not return until she received a doctor's note that said she would no longer black out." ECF No. 39-1, p. 3.

she suffered any pecuniary loss because of her suspension.[4]  Accordingly, the Court finds that Jones did not suffer a tangible employment action that would give rise to TAC's liability regarding her hostile work environment claim.  Accordingly, the *Ellerth-Faragher* affirmative defense is available to TAC.

The Court will now discuss the elements of this affirmative defense as they relate to the present case.  First, the employer must show that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.  This element has two prongs: prevention and correction. *Brenneman*, 507 F.3d at 1145.  "Under the prevention prong, the employer must have exercised reasonable care to prevent sexual harassment." *Id*.  "Under the correction prong, the employer must have promptly corrected any sexual harassment that occurred." *Id*.

Here, TAC has demonstrated that it exercised reasonable care to prevent sexual harassment.  TAC has a facially valid anti-harassment policy, and it distributes a copy of this policy to all employees.  Its employees must acknowledge receipt of the policy.  The policy has a non-retaliation provision and lists four individuals who may be contacted in the case of harassment.  Although having an anti-harassment policy is not in itself enough to show that TAC exercised reasonable care, the distribution of a valid policy provides compelling proof of preventing sexual harassment. *Id*. Jones acknowledged receipt of the anti-harassment policy, understood what behaviors constituted sexual harassment, and understood that she was to immediately report any incidents of sexual harassment.  The policy was visibly posted with contact information at TAC's Road Runner store

---

[4] Half of Jones's days off work during the two-week "suspension" can be attributed to her requests to be off work.  She had already requested to be off work from July 24, 2011, through July 26, 2011 and from August 3-8, 2011.  Jones returned to work on August 6, 2011.  Also, Jones was a part-time employee and had already worked over 100 hours for the month of July.  In March 2011, Jones worked a total of 97.5 hours.  In April 2011, Jones worked a total of 81 hours.  In May 2011, Jones worked a total of 118 hours, and she worked a total of 89 hours in June 2011.

No. 2 and, in fact, Jones utilized one of the contact numbers found on the posting to initiate her reporting.

The Court finds that TAC has also met the correction prong. According to Jones, upon dialing the phone number provided on TAC's posting, she spoke to a TAC representative and reported the harassment. Jones's initial report, made approximately a few days prior to July 23, 2011, led to a meeting with Denny Peterson, the TAC human resources representative, where Jones showed Peterson the inappropriate text messages allegedly from Kelly. Jones's initial telephone report also led to a more extensive written report on July 26, 2011. As a direct result of Plaintiff's reporting, TAC fired Kelly the next day on July 27, 2011. *Id.* Thus, it appears that Plaintiff's utilization of TAC's anti-harassment policy worked. Accordingly, the Court finds that TAC acted promptly to correct the sexually harassing behavior which formed the basis of Jones's allegations.

Jones asserts that TAC was aware that, prior to her employment with TAC, other employees had claimed that Kelly harassed them and that TAC did not enforce its anti-harassment policy regarding these other allegations. Plaintiff further asserts that TAC failed to take corrective measures against Kelly regarding these other allegations.

This same argument has been addressed and rejected by the Eighth Circuit in *Crawford v. BNSF Ry. Co*. 665 F.3d 978 (2012). In *Crawford,* appellants argued that BNSF's policy was not actually enforced and that BNSF only took minimal action, such as counseling, after learning of other employees' complaints about a certain supervisor. *Id*. at 983. The Eighth Circuit found that, in each of the assertions, "BNSF investigated these incidents and took action in response," which included "meeting with [the supervisor and] counseling him on appropriate work behavior[.]" *Id.* at 984. The Eighth Circuit went on to state that it "afford[s] an appropriate degree of deference to

business judgment where the records show that the employer conducted a reasonable investigation in good faith." *Id.* (internal quotations omitted). Finally, the Eighth Circuit stated that the "fact that appellants would have desired harsher responses does not make BNSF's otherwise valid policy ineffective." *Id.*

Here, the record reveals that three other sexual harassment complaints had been lodged against Kelly prior to Jones's complaint. In particular, one employee alleged that Kelly sexually harassed her in April 2004, seven years before Jones was employed by TAC. Denny Peterson immediately investigated the complaint and compiled an investigative file amounting to at least eleven pages. Further, Peterson questioned Kelly about the allegation, he denied the allegation, and she counseled Kelly that he was to conduct himself professionally and that he was not to retaliate against any employee or witness. The record also shows that Peterson reported the matter to higher management, and Kelly was required to undergo additional training. The investigative file also contains additional notations wherein the complaining employee later expressed that everything was fine between her and Kelly and that she had even invited Kelly to her wedding. In sum, the record shows that an investigation occurred, Kelly denied the allegation, and he was counseled regarding the allegation. Kelly received additional training, the harassment stopped, and the employee expressed no further issues.

In September of 2010, prior to Plaintiff's employment, two TAC employees accused Kelly of sexual harassment, and Peterson conducted a multi-day, multi-party investigation. When Peterson interviewed five other employees, all of them said nothing inappropriate had ever occurred to them. In addition, one employee called one of the complainants a "poor employee." An employee who had been identified as someone who could corroborate the allegation actually denied seeing an

inappropriate picture allegedly texted from Kelly. Kelly was summoned to TAC's offices, the allegations were explained to him, he denied the allegations, and he was told to take three days off. When he returned to work, he apparently resigned. Again, the record shows that TAC's policy was in place, the employees utilized the policy, TAC conducted a prompt investigation, Kelly was counseled, TAC took action, and the alleged harassment stopped.

It appears that TAC rehired Kelly on or around October 22, 2010. Certain conditions were placed upon him for continued employment. These conditions included ongoing supervisory training, monitoring, and a requirement that another manager or supervisor be present when future counseling occurred. *Crawford*, 665 at 984.

Jones asserts that TAC "turn[ed] a blind eye on Kelly" which resulted in Kelly's alleged sexual assault against her. There is no evidence, however, that supports this assertion. The Court is required to "afford an appropriate degree of deference to [the] business judgment" contained in TAC's records showing in each instance: (1) an investigation; (2) a confrontation and/or counseling with Kelly; and (3) action taken ending the alleged harassment. *See id*. Jones may disagree with the outcome of each of the prior investigations, but the fact that she would have desired harsher responses to Kelly's behavior does not make TAC's otherwise valid policy ineffective. *See id.* Accordingly, the Court cannot find that TAC failed to enforce its anti-harassment policy.

The Court now considers the second prong of the *Ellerth-Faragher* affirmative defense, which is whether the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Here, Jones waited two months before she reported the alleged sexual assault to TAC. She asserts, however, that a "jury should decide [whether this delay] was reasonable in light of Kelly's actual threats of retaliation,

Jones' fragile condition, and the overall ineffectiveness of TAC's policy." ECF No. 39, p. 16.

The Eighth Circuit has recognized the "great psychological burden it places on one who is already the victim of harassment" to be required to report and determined the balance to be in favor of requiring reporting if the "employee wants to impose vicarious liability on the employer and collect damages[.]" *Weger v. City of Ladue,* 500 F.3d 710, 724-25 (8th Cir. 2007) (internal citations and quotations omitted). Subjective fears of confrontation, unpleasantness, or retaliation "do not alleviate the employee's duty . . . to alert the employer of the allegedly hostile environment." *Id.* at 725 (internal citations and quotations omitted). A plaintiff must demonstrate a "truly credible threat of retaliation." *Id.* Here, Jones asserts that she did not report Kelly's alleged sexual assault because her "job was threatened." ECF No. 40-1, p. 3. Jones makes the general assertion that she feared retaliation; however, there is no evidence of a truly credible threat of retaliation.

Two months had passed between the alleged assault and Jones's actual reporting, and Jones makes no mention of any specific threats of retaliation that occurred during this time. Further, TAC's anti-harassment policy contained an anti-retaliation provision, and there is no evidence that any TAC employee has ever been terminated for reporting a sexual assault or sexual harassment. *See Crawford*, 665 F.3d at 985 (stating that the "record is devoid of any evidence of prior retaliation or threats of retaliation by [the employer] for reporting harassment."). Moreover, there is no evidence that Jones was even aware of any of the prior allegations of harassment against Kelly. Accordingly, the Court finds that Jones "unreasonably failed to take advantage of any preventative or corrective opportunities" provided by TAC or "to avoid harm otherwise." *See Crawford,* 665 F.3d at 985. Having found that TAC satisfies each element of the *Ellerth-Faragher* affirmative defense,

the Court grants TAC's Motion for Summary Judgment as to Jones's hostile work environment claim pursuant to Title VII and the Arkansas Civil Rights Act.

### B. Retaliation Claim

Title VII prohibits retaliation against employees who have acted to vindicate their statutorily protected rights by reporting harassment in the workplace. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012). To establish a prima facie case for retaliation, a plaintiff must show: (1) that she engaged in protected conduct; (2) that she suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and (3) that there is a causal connection between the protected activity and the adverse action. *Id*. If the plaintiff establishes prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action. *Id*. at 857. Finally, if the employer proffers a legitimate non-retaliatory reason, the plaintiff may attempt to refute the asserted reason as mere pretext. *Id.*

Jones claims that she was suspended for two weeks beginning on July 26, 2011, because she reported Kelly's alleged sexual assault and harassment by telephone some time prior to July 23. Jones, however, has consistently attributed the suspension to her seizures and the cash shortage at her register. *See* ECF No. 39-1, p. 3; ECF No. 39, p. 6; ECF No. 35-2, p. 35. The Court has already found that Jones cannot prove a causal connection between her sexual harassment claim and her suspension. Further, there is no evidence that Kelly even knew of the Jones's reporting of sexual harassment prior to July 23. Thus, Jones cannot show that there is a causal connection between the protected activity (Jones's reporting of sexual harassment) and the adverse action (two-week suspension)

Jones further claims that, after Kelly was fired, she continued to experience retaliation in the form of her supervisor assigning her "demeaning jobs," such as cleaning with bleach. ECF No. 39, p. 6. Even if these actions were considered materially adverse employment actions, the undisputed evidence links these cleaning assignments to her medical condition—not her reporting of sexual harassment. Because of her seizures, Jones admits that she could not perform any of the normal functions of a cashier or deli worker. Because she could not work as a cashier, TAC had to find other jobs for her to do. Accordingly, Jones fails to show that there is a causal connection between the protected activity (Jones's reporting of sexual harassment) and the adverse action (job assignment such as cleaning and working with bleach).

Jones also claims that co-employees stared at her, were up in her face, and threatened to beat her up. However, these actions do not rise to the level of a materially adverse employment action. Not everything that makes an employee unhappy is an actionable adverse employment action. *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir. 1998). Instead, the action must have had some materially adverse impact on a plaintiff's employment terms or conditions to constitute an adverse employment action. *Id*. Jones suffered no loss in pay or hours worked, and she has not shown how these alleged actions by her co-employees effected a material change in the terms or conditions of her employment.

The Court finds that Jones cannot make out a prima facie case of retaliation. Accordingly, the Court grants TAC's motion for summary judgment as to Plaintiff's claims for retaliation pursuant to Title VII and the Arkansas Civil Rights Act.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that TAC's Motion for Summary Judgment (ECF No. 34) should be and hereby is **GRANTED** as to Jones's sexual harassment and retaliation claims pursuant to Title VII and the Arkansas Civil Rights Act as well as her state law claims of outrage, battery, and defamation.  Accordingly, these claims are **DISMISSED WITH PREJUDICE**.

With the dismissal of the federal claims upon which subject matter jurisdiction is based, the Court, exercising its discretion after a review of the relevant factors, is persuaded that the remaining pendent state claims of negligent hiring and negligent supervision/retention should be and hereby are **DISMISSED WITHOUT PREJUDICE**.  *See* 28 U.S.C. § 1367(c).  Jones may pursue these claims in the appropriate state court forum.  The Court will issue a Judgment of even date consistent with this Opinion.

**IT IS SO ORDERED**, this 23rd day of December, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge
